**In re William PUGH and Elizabeth Pugh d/b/a Pugh Poultry, Debtors.**

**Bankruptcy No. 91–12432–8P7.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

March 24, 1994.

Buddy D. Ford, Tampa, FL, for debtors.

Allan C. Watkins, Tampa, FL, for trustee.

V. John Brook, St. Petersburg, FL, Trustee.

## ORDER ON ORDER TO SHOW CAUSE RE: CONTEMPT

ALEXANDER L. PASKAY, Chief Judge.

THE MATTER under consideration is a Request for Order to Show Cause filed by V. John Brook, Jr., (Trustee) who sought the issuance of an Order to Show Cause directing William and Elizabeth Pugh (Debtors) to show cause, if they have any, why they should not be held in contempt for not turning over certain assets claimed to be properties of the estate to the Trustee. The Amended Motion was filed on July 23, 1993 and on August 4, 1993 this Court issued an Order to Show Cause directing the Debtors to respond to the Amended Motion of the Trustee. In due course a final evidentiary hearing was scheduled at which time the following undisputed facts were developed, primarily based on the record of this case.

The Debtors filed their original Petition for Relief under Chapter 11 of the Bankruptcy Code on September 27, 1991. The Debtors neither scheduled as an asset a chose of action they had against Zephyr Egg Company, Inc. (Zephyr Egg), which claim was already litigated at the time the Chapter 11 was commenced, nor was the same claimed as exempt on the Debtors' original Schedule C. The meeting of creditors called pursuant to § 341 while the Chapter 11 case was pending was held on November 5, 1991. On February 5, 1992 the Debtors filed their Notice of Conversion. On February 12, 1992 this Court entered an Order and converted the Chapter 11 case to a Chapter 7 case. The Order of Conversion scheduled a meeting of creditors to be held originally on March 19, 1992 but was reset and was held and concluded on April 16, 1992. On April 3, 1992, the Debtors filed an Amended Schedule and for the first time disclosed as an asset their claim against Zephyr Egg and claimed the same as exempt on their Schedule C. No objection was filed by the Trustee within thirty days from the conclusion of the rescheduled meeting of creditors, that is prior to May 16, 1992.

On September 10, 1992, the Trustee filed a Report and Notice of Intent to Sell Property of the Estate. The property the Trustee intended to sell was in fact the Trustee's attempt to assign the lawsuit discussed earlier back to the Debtors. The proposed action by the Trustee was not really a sale but was in fact an attempt to compromise between the Trustee and the Debtors of the chose of action based on a 70/30 split of any future settlement which may be obtained from Zephyr Egg. On March 19, 1993, the Trustee filed a Motion and sought approval of the assignment of this chose of action to the Debtors or in the alternative to approve settlement of claims under the terms noted above. On May 17, 1993, this Court entered an Order and denied the Motion because of improper service.

The matter under consideration is the Amended Motion for Order to Show Cause mentioned earlier in which the Trustee seeks a contempt citation against the Debtors for failing to turn over the proceeds of the settle-

ment obtained from Zephyr Egg in the amount of $100,000. It is without dispute that the Zephyr Egg litigation was in fact settled by the state court counsel of the Debtor who filed the suit against Zephyr Egg for a sum sufficient to pay all allowed claims filed in this case with interest.

Basically this is the factual background of this controversy based on which it is the Trustee's contention that the Debtors should be found in civil contempt for failure to turn over the proceeds of the settlement.

■ Even a cursory review of the record leaves no doubt that the Trustee's request to hold the Debtors in contempt is totally lacking in any evidentiary support in this case. This is so because it is neither alleged in the Trustee's Motion nor in fact is there an Order by this Court which ordered the Debtors to turn over any part of the proceeds of the settlement obtained in the Zephyr Egg litigation to the Trustee. It is axiomatic and cannot be gainsaid that in order to find one in contempt there must be a willful, knowing violation of a written order of the Court. As noted there was never any order entered in this case ordering the Debtors to turn over to the Trustee any part of the settlement. From this it follows that the request for relief set forth in the Amended Motion is baseless and without merit.

■ However, in order to avoid further additional litigation concerning the Trustee's entitlement to any part of the settlement, this Court is of the opinion that it is proper to consider the ultimate issue which is whether or not 70% of the settlement rightfully belongs to the estate and as such subject to administration by the Trustee.

At the hearing it was urged by the Debtors that inasmuch as there was no timely objection filed to the exemptions claimed on the amended schedules, under the Supreme Court decision of *Taylor v. Freeland & Kronz*, —— U.S. ——, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992), the Debtors' right to claim the proceeds have been conclusively established and any objection to the claim of exemptions is now barred. At the hearing it was mistakenly assumed by counsel that the *Taylor* decision was rendered after the expi-

ration of the 30 days to object to the claim of exemption provided by F.R.B.P. 4003(b). For this reason, all arguments addressed were founded on the issue of whether it is proper to apply the holding in *Taylor* retroactively. Upon reconsideration, however, it is now clear that this is not the case because the *Taylor* case was argued on March 2, 1992 and the Supreme Court's decision was handed down on April 21, 1992, prior to the time for filing objections expired in this case. Thus, the Debtors' right to claim the settlement proceeds has been conclusively determined based on *Taylor* and from this it follows that the Trustee is not entitled to any of the proceeds of the settlement unless this alleged agreement between the Debtors and the Trustee is binding notwithstanding the fact that the same was never submitted for this Court's consideration and was never approved. The answer to this question must be in the negative for the following reasons:

■ The so-called agreement relied on by the Trustee consists of the following documents submitted into evidence: (1) a Letter dated April 20, 1992 from the Trustee to the attorney who represented the Debtors in the State Court litigation inquiring about the status of the lawsuit; (2) a Letter dated May 12, 1992 from the attorney in response to the Trustee acknowledging the inquiry and stating that he anticipates that settlement or jury verdict would greatly exceed the amount owed to creditors by the Debtors; (3) a Letter dated May 25, 1992 from the Trustee to Mr. Ford, counsel of record of the Debtors, informing him that according to state court counsel the estate would receive 70% of the recovery and the Debtors 30%; (4) a Letter dated August 4, 1993 from Mr. Ford to the Trustee in which Mr. Ford states that "the split as to the Zephyrhills Egg Company lawsuit is acceptable to my clients. Please submit the proper documentation for approval with the Court." (Joint Composite Exh. No. 1)

■ It is clear from the foregoing, first that the exchange of correspondence lacks sufficient legal force to operate as a binding and enforceable contract. Second, even assuming it is, it is clear that it could not have become a binding contract unless the Trustee

complied with F.R.B.P. 9019 which in sub-clause (a) requires a Court approval of any compromise by the estate submitted by a Motion filed by the Trustee and after a hearing on notice to creditors.

As noted earlier, no Motion was ever filed by the Trustee and, of course, no order was ever entered approving this proposed compromise. For the reasons stated, the so-called 70/30 settlement represented by the documents described earlier is not valid or enforceable. In sum, (1) the settlement proceeds are exempt and not subject to administration and (2) there is no approved, binding agreement concerning the division of the proceeds of the settlement between the Debtor and the Trustee. Concededly, this conclusion produces a very unfortunate and seemingly inequitable result. This is so because had the Trustee timely challenged the claim of exemptions, a claim which is clearly not sustainable under applicable law, or at least filed a Motion to approve this proposed compromise with the Debtors and obtained approval of same, the funds available under the compromise would have been more than sufficient to pay all allowed claims in full with interest. Moreover, since the Debtors already obtained a discharge, the creditors are now left high and dry and without recourse just because the Trustee mishandled the administration of this estate.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the Order to Show Cause be, and the same is hereby, discharged. It is further

ORDERED, ADJUDGED AND DE-CREED that any possible future request by the Trustee to retain any part of the proceeds of the settlement are without merit and will be denied.

DONE AND ORDERED.